**In re William Ortiz ORTIZ and Norma Suarez Arguinzoni, Debtors.**

**Civ. No. 96–1151(PG).**

United States District Court,
D. Puerto Rico.

Sept. 23, 1996.

---

5. The response does not address the allegations of the objection paragraph by paragraph.

Luis A. Medina Torres, San Juan, PR, for Appellants.

Lyssette Morales Vidal, Villa Blanca, Caguas, PR, for Appellee.

## *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

This matter is before this Court on the appeal of debtors William Ortiz Ortiz and his wife, Norma Suárez Arguinzoni, of the U.S. Bankruptcy Court judgment entered on November 1, 1995, dismissing their Chapter 13 case with prejudice for a period of one year.

### *Background*

Debtors filed this Chapter 13 case on February 22, 1994. They had previously filed two other Chapter 13 cases. On May 9, 1994, creditors Rafael Rivera Cruz and spouse (hereinafter referred to as creditors) filed a motion for relief from stay under section 362(d)(1) & (2) to execute a judgment they had obtained against debtors. The stay was lifted by the bankruptcy court on July 8, 1994. Debtors filed a motion for reconsideration. The hearings set for October 3 and 4, 1994, to consider debtors' opposition to the lift of stay and debtors' confirmation was continued to February 21, 1995. Debtors' counsel did not appear at said hearing, thus the hearing was again continued to June 19, 1995. Debtors filed a *pro se* motion in relation to the non-attendance of counsel. On March 6, 1995, creditors requested the dismissal of the case upon debtors' failure to propose a new Chapter 13 plan. On March 31, 1995, notice was sent to the parties that the following motions would be considered at the hearing of June 19, 1995: debtors' motion for confirmation of amended plan; trustee's favorable recommendation; and creditors' opposition to debtors' motion and their request for dismissal. On May 23, 1995, debtors' counsel, Wilfredo Segarra Miranda, filed a motion that he be allowed to withdraw from representing debtors due to debtors' *pro se* filings and the loss of a client relationship.

On June 6, 1995, creditors filed a motion in opposition to any relief requested by debtors and requesting dismissal of the case for bad faith. At the hearing on June 19, 1995, the court granted attorney Segarra Miranda's request to withdraw as debtors' counsel and continued the hearing to September 27, 1995. The bankruptcy judge expressly stated at the June 19 hearing that he was not going to give debtors a specific term to procure counsel; however, he made two warnings: (1) that the September 27 hearing will not be heard unless debtors were represented by counsel and (2) that he was not going to continue the same unless for cause such as sickness or other major cause. At the September 27, 1995 hearing the following occurred: (1) debtors appeared without counsel; (2) the trustee informed that the plan was not sufficiently funded and (3) creditors requested the dismissal of both the adversary proceeding and the bankruptcy case. The bankruptcy judge denied confirmation of the Chapter 13 amended plan and dismissed the case with prejudice enjoining debtors from filing another bankruptcy case for one year pursuant to sections 1307(c)(1) and (5) of 11 U.S.C.A. Debtors filed a motion for reconsideration of dismissal, which was denied.

### *Discussion*

Under the standards applicable when reviewing decisions of the bankruptcy court, this Court is required to accept the bankruptcy's findings of fact unless clearly erroneous, and conclusions of law are reviewed *de novo*. Rule 8013 of the Federal Rules of Bankruptcy Procedure; *Matter of Excalibur Auto Corp.*, 859 F.2d 454, 457 n. 3 (7th Cir.1988).

■ Debtors appeal the dismissal with prejudice of their Chapter 13 petition based on two grounds: (1) that the dismissal of the petition and the adversary complaint violated their due process rights; and (2) that there was no "cause" as required under section 1307 of the Bankruptcy Code for dismissal with prejudice.

Debtors allege that they were not "unequivocally warned that should they not bring an attorney their case will be dismissed."

The due process argument has two ramifications: (1) the denial of due process because

the case was dismissed without notice and a hearing; and (2) the violation of their due process rights because they were denied the assistance of counsel.

A Chapter 13 bankruptcy case may only be dismissed after notice and a hearing. 11 U.S.C. § 1307(c). However, as observed in *In re Black,* 180 B.R. 534, 535 (S.D.Ind.1995), the phrase "after notice and a hearing" used in § 1307(c) does not necessarily mean that a hearing is required:

> "after notice and a hearing," or a similar phrase ... authorizes an act without an actual hearing if such notice is given properly and if ... such a hearing is not requested timely by a party in interest....

*Id.* citing 11 U.S.C. § 102(1)(B); 11 U.S.C. § 103(a) (applying 11 U.S.C. § 102 to Chapter 13 bankruptcies); 5 *Collier on Bankruptcy* ¶ 1300.12[1] (1993) (describing "after notice and a hearing" as a "concept of ... elastic design"); *In re Orr,* 170 B.R. 395, 398 (E.D.Mo.1994) ("[section 102(1) ] reinforces the authority of bankruptcy judges to handle their cases in a speedy and expeditious manner.")

Debtors were afforded notice of the hearing of September 27, 1995, on the contested Chapter 13 plan and on creditors' request for dismissal, and they were given an opportunity to be heard at the September 27, 1995 hearing, if they appeared represented by counsel. Debtors were warned at the June 19, 1995 hearing that the September 27, 1995 hearing would not be continued except for a major cause such as sickness and that the hearing will not be held unless they were represented by an attorney. The notice provided to debtors was sufficient.

As stated by the Court in *In re Petro,* 18 B.R. 566, 569 (E.D.Pa.1982):

> Due process requires notice of such a nature that it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Under the circumstances presented in a bankruptcy, due process does not require informing the debtor of all the possible

ramifications of a dismissal hearing [footnote omitted]. It may well be that such a form of notice would better protect the right of debtors, but the constitution does not require it. Due process is flexible and calls for only those procedural protections as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484; *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

Debtors were clearly warned on June 19, 1995, that a lawyer was indispensable to hearing the controversy. They chose to appear at the September 27 hearing without counsel knowing that the same would not be continued. They cannot now complain that they were unaware of the import of the bankruptcy court's June 19, 1995 admonishment. If they did not understand the effect of such admonishment, they could have and should have spoken at the June 19, 1995 hearing. There are no circumstances which would indicate that the notice and warnings provided do not meet the due process standard.

■ Debtors further contend that they were denied the right to assistance of counsel in violation of the due process clause of the Fifth Amendment. They cite the Supreme Court's holding in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where the Court held that "[i]f in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and therefore, of due process in the constitutional sense." *Id.* at 69, 53 S.Ct. at 64. The problem with debtors' argument is that the bankruptcy court did not refuse to hear debtors' counsel because obviously there was no counsel, but what the bankruptcy court did in effect was that it failed to grant debtors additional time to obtain new counsel. The matter of continuance is traditionally within the discretion of the trial judge. *United States v. 9.19 Acres of Land,* 416 F.2d 1244 (6th Cir.1969) (*per curiam* ) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841,

849–50, 11 L.Ed.2d 921 (1964)). As succinctly stated in the dissenting opinion in *Anderson v. Sheppard,* 856 F.2d 741 (6th Cir.1988):

> The constitutional law, and our cases, are quite clear on this point. A civil plaintiff has no right to appointed counsel. Plaintiff has a right to a counsel, if he can procure one, and a trial court may not prevent the appearance of such counsel. However, the trial judge is not required to wait any particular period of time while a party attempts to procure one. *Id.* at 752.

Five lawyers have intervened in the three Chapter 13 petitions filed by debtors to stop the execution of a judgment in favor of creditor Rivera Cruz and his wife. The controversy has been pending for over five years. Despite the bankruptcy judge's statement that he will not give debtors a determinate time to procure counsel, the bankruptcy judge did set a specific date for the hearing on the contested Chapter 13 plan, debtors' adversary complaint to reimpose the stay, creditors opposition thereto and request for dismissal. This should have behooved them to move as rapidly as possible before the date set for the hearing. Debtors definitely had an unencumbered period of 100 days since the June 19th hearing in which to find counsel. No word forthcame from the debtors from June 19, 1995, until the date set for the hearing, September 27, 1995. The bankruptcy judge was not required to wait more than 100 days while debtor attempted to procure new counsel. No case has been cited where the court has been found to have abused its discretion where a civil plaintiff is given that length of time to procure new counsel.

Under the circumstances present in this case the bankruptcy judge's denial of a continuance is not so arbitrary as to violate debtors' due process rights.

### Cause Under Section 1307

■ 11 U.S.C. § 1307 provides that on request by a party-in-interest, after notice and a hearing, the Court may dismiss a case under Chapter 13 or convert the case to a Chapter 7, whichever is in the best interests of the creditors and the estate, for cause.

The statute enumerates a non-exclusive list of reasons including: (1) unreasonable delay by the debtor that is prejudicial to the creditors (section 1307(c)(1)); (2) denial of confirmation of a plan under section 1325 of this title and (3) denial of a request made for additional time for filing another plan or a modification of a plan (section 1307(c)(5)).

Debtors argue that the bankruptcy court's finding of cause due to unreasonable delay prejudicial to creditors Rivera Cruz and his wife; denial of confirmation of a plan and the implicit finding that the petition was filed in bad faith, are not supported by the record.

■ The Court reviews the bankruptcy court's decision to dismiss the Chapter 13 petition for an abuse of discretion, but the Court reviews the facts underlying the decision under a "clearly erroneous" standard. *In re Bistrian,* 184 B.R. 678, 685 (E.D.Pa. 1995), citing Bankruptcy Rule 8013; *In re Beatty,* 162 B.R. 853, 855 (9th Cir. BAP 1994); and *Whittaker v. Philadelphia Elec. Co.,* 92 B.R. 110, 111 (E.D.Pa.1988), *aff'd* 882 F.2d 791 (3rd Cir.1989). "The bankruptcy court's good faith finding is a purely factual finding evaluated under the clearly erroneous standard of review." *Matter of Love,* 957 F.2d 1350, 1354 (7th Cir.1992). The Seventh Circuit observed:

> The clearly erroneous standard requires this Court to give great deference to the bankruptcy court, the trier of fact. Under this standard, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as trier of fact. Indeed, reversal under the clearly erroneous standard is only warranted if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. (Citations and quotations omitted).

*Matter of Love,* 957 F.2d at 1354.

The bankruptcy court acknowledged that the controversies between debtors and creditors herein have really been a two-party dispute that have spanned through five years and three bankruptcy cases. The court de-

termined at the September 27 hearing that "[i]f the secured claim by Rafael Rivera Cruz and spouse stands as filed, then the plan is clearly insufficiently funded and confirmation must and is hereby denied." The court also concluded that due to the inordinate period of time that the controversy has remained active and the debtors having failed to confirm a plan within a reasonable time, there has been unreasonable delay by debtors that has been prejudicial to the creditors. The court further found that the "Debtors have used the Bankruptcy Court as a means to forestall the execution of the judgment."

■ "Good faith is a term incapable of precise definition, and, therefore, the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court." *Matter of Love*, 957 F.2d at 1355. Bankruptcy courts look at the totality of circumstances on a case-by-case basis. *Id.*

There are several facts in the record which support the bankruptcy court's findings. Debtors filed their first Chapter 13 petition in 1990 (Civil Case No. 90–02165). The same was dismissed for not complying with a discovery order. Debtors filed a second Chapter 13 petition (Case No. 91–06777). After the second Chapter 13 case was filed the dismissal order of the first petition was vacated and said case was consolidated with Case No. 91–06777. The consolidated cases were subsequently dismissed as filed in bad faith, and debtors were enjoined from refiling another case for one year. Debtors then filed an appeal of the bankruptcy court's order of dismissal. Before the district court had issued a decision and after one year had elapsed since the bankruptcy court's judgment was entered enjoining debtors for filing another bankruptcy case, debtors filed a third Chapter 13 petition. As a result, the district court dismissed the appeal with prejudice as moot.

■ Although the filing of successive or serial Chapter 13 petitions does not constitute lack of good faith *per se*, it may be evidence of the lack of good faith. *In re Earl*, 140 B.R. 728, 736 (Bkrtcy.N.D.Ind. 1992), citing *In re Metz*, 820 F.2d 1495, 1497 (9th Cir.1987) (while successive filings are not necessarily in bad faith *per se*, "successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements."). The result achieved by debtors' successive filings has been to forestall for five years the execution of the judgment entered against them. The forestalling has been due in part on debtors' continuous hiring and discharging of lawyers and their abusive filing of *pro se* motions. Such conduct has hindered and delayed the confirmation of a Chapter 13 plan causing undue prejudice to the creditors.

Debtors have had six different attorneys, all with bankruptcy experience. As to attorney number five, Jorge Collazo, it appears from the record that debtors filed a *pro se* motion wherein they explained that they could not sign the agreement for entry of consent order in this third bankruptcy petition as advised by their attorney because it violated their civil and constitutional rights. Attorney Collazo resigned on July 27, 1994. Attorney Wilfredo Segarra Miranda assumed the legal representation of debtors on August 10, 1994. Attorney Segarra filed a motion to withdraw as legal counsel of debtors on May 23, 1995. The motion was denied without prejudice by the bankruptcy court. At the hearing on June 19, 1995, attorney Segarra renewed his motion to withdraw. The bankruptcy court granted the same grounded on the fact that debtors had been filing *pro se* motions and had filed one in February 28, 1995, indicating that they had not received adequate orientation from attorney Segarra. Mr. Segarra testified no attorney-client relation existed between him and debtor, Mr. Ortiz, and that Mr. Ortiz failed to follow his advice.

Under the "totality of circumstances" test, the evidence before the Court clearly supports the bankruptcy court's finding that the case should be dismissed for delay prejudicial to the one secured creditor in the case as well as for abuse of process. *See, e.g., In re Clark*, 86 B.R. 593 (Bkrtcy.E.D.Ark.1988) (Chapter 13 case dismissed for cause where debtor had history of multiple bankruptcy filings on eve of foreclosure sales, there was only one secured creditor with debt past due for over three years, the schedules and state-

ments of affairs incomplete, and debtor lacked regular and stable income).

 "When a bankruptcy case has been filed only for the purpose of inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith." *In re Earl,* 140 B.R. at 739.

Upon reviewing the entire evidence, the Court cannot say with definite and firm conviction that a mistake has been committed by the bankruptcy court. Accordingly, the bankruptcy court's finding of lack of good faith and undue delay under Section 1307(c)(3) and (5) are not clearly erroneous.

WHEREFORE, the Court **AFFIRMS** the bankruptcy court's dismissal of debtors' Chapter 13 petition.

**IT IS SO ORDERED.**